Amy M. Wilkins (SBN 022762)
Laura C. Brosh (SBN 031486)
THE WILKINS LAW FIRM, PLLC
3300 N. Central Ave., Ste. 2600
Phoenix, AZ  85012
Tel:  602-795-0789
awilkins@wilkinslaw.net
lbrosh@wilkinslaw.net

Attorneys for Top Class Action

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LIABILITY LITIGATION<br><br><br>NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION | Case No. 2:20-MC-00031-MTL<br><br>**RESPONSE TO 3M'S MOTION TO COMPEL DISCOVERY FROM TOP CLASS ACTIONS, LLC** |

Top Class Actions, LLC ("TCA") submits this response in opposition to 3M's Motion to Compel Discovery.  This Court should deny 3M's Motion to Compel because the documents sought by 3M are protected by attorney-client privilege, confidentiality, attorney work-product, and lack relevance.

**Background**

TCA operates a website that contains content about class action settlements, investigations, and lawsuits. Some of the web pages on the site are attorney advertising. For example, a law firm that is involved with a particular class action might pay TCA to run content that explains a particular class action investigation to website users, and invite website users to fill out a form on the website to connect with an attorney.

### A. TCA's Process in Generating Content

TCA's website contains two types of content: (1) attorney advertising and (2) other content written by TCA relating to particular class actions. The attorney advertising content is paid for and reviewed by the sponsoring attorney. Other content is written by writers paid by TCA and is not reviewed by an attorney. (Ex. A, Decl. of Steve Williams at ¶ 3.)

As for the attorney advertising, TCA works with the lawyers who are bringing a lawsuit to determine the content for the advertising campaign. The lawyers share their thoughts on the lawsuit, the information they believe potential plaintiffs might need, and other thoughts, opinions, and mental impressions about the content of the campaign. (Ex. A, Williams Decl. at ¶ 4.) TCA and its writers exchange drafts of the advertising material with the lawyers supervising the advertising, and the lawyers provide suggestions, mental impressions, opinions, and comments on the material based on their knowledge of the strategy for the lawsuit. (Ex. A, Williams Decl. at ¶ 5.)

### B. Engagement With Potential Class Members or Plaintiffs

On some web pages, TCA provides forms for potential plaintiffs or class members to fill out so that those putative class members or plaintiffs may connect with lawyers. The web pages are replete with information explaining that the form content will be sent to a lawyer, confidentially, so that the potential plaintiff's claim can be evaluated by a lawyer.

In this case, TCA was engaged by a client law firm to promote the 3M Ear Plug class action investigation. A typical article, "3M Ear Plugs Were Defective, Claim Servicemembers," describes the ear plug that is the subject of recent litigation and describe the ongoing litigation. It further describes injuries reported by veterans bringing the lawsuits. The web page concludes, "Do YOU have a legal claim? Fill out the form on this page now for a free, immediate, and confidential case evaluation. The attorneys who work with Top Class Actions will contact you if you qualify to let you know if an

individual 3M Ear Plug lawsuit or military hearing loss class action lawsuit is best for you." *See* Exhibit B, example articles.

The form that runs down the side of the webpage also makes plain that the form is to be filled out for a case evaluation by an attorney. It says, "JOIN A FREE 3M EAR PLUGS CLASS ACTION LAWSUIT INVESTIGATION. If you qualify, an attorney will contact you to discuss the details of your potential case at no charge to you." (Ex. B.)

At the end of the form, the user must check a box stating he or she understands and agrees to the following:

> Any information you submit to Top Class Actions may be shared with attorneys or law firms to facilitate formation of an attorney-client relationship. As such, it is intended that the information will be protected by attorney-client privileged, but it is possible that Top Class Actions or such attorneys may be ordered by a court of law to produce such information in certain legal situations. Also, you are not formally represented by a law firm unless and until a contract of representation is signed by you and the law firm.
>
> ☐ I understand and agree

(Ex. B.) When a user inputs information on the form and clicks "submit," the information on the form is transmitted directly to the law firm sponsoring the advertising. (Ex. A, Williams Decl. at ¶ 9.)

In its legal notice on its website, Top Class Actions explains, again, that users' content it provided directly to law firms for purposes of possibly establishing an attorney-client relationship: "TCA discloses personally identifiable individual information and other information you provide us to lawyers or law firms whose advertising you are responding to.  The information you provide to us to be transmitted to lawyers or law firms is considered confidential by TCA and is transmitted for purposes of possibly establishing an attorney-client relationship with the law firm." *See Legal Notice,* available at https://topclassactions.com/top-class-actions-legal-notice/ (last visited July 1, 2020).

3

### C. The 3M Ear Plug Lawsuits

3M is facing multiple individual lawsuits and a class action arising out of its ear plugs provided to service members. Instead of protecting the military service members in Iraq and Afghanistan, the lawsuits allege that ear plugs were too short to fit in the ear canal. A United States Department of Justice press release provided, "The Department of Justice announced today that 3M Company (3M), headquartered in St. Paul, Minnesota, has agreed to pay $9.1 million to resolve allegations that it knowingly sold the dual-ended Combat Arms Earplugs, Version 2 (CAEv2) to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device." *See 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs*, available at https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual (date last visited July 9, 2020). Additional lawsuits brought by individual plaintiffs soon followed, with plaintiffs alleging hearing loss and lingering tinnitus after exposure to the noise of gunfire, bombs, aircraft, and the like without adequate hearing protection.

In a patent attempt to gather communications between plaintiffs or putative class members and their lawyers, 3M served TCA with a subpoena on February 10, 2020. The subpoena sought communications and documents between TCA, plaintiffs' law firms, claimants, and potential claimants. TCA served written objections to 3M's subpoena on February 21, 2020. TCA objected that the communications with law firms were protected work product, because the lawyers' mental impressions of the case were reflected in their communications about the content of the web pages. TCA objected to producing information about the putative class members or plaintiffs on two grounds: attorney-client privilege, as the information was provided for purposes of connecting a client with a lawyer for possible representation, and confidentiality, pursuant to the lawyer's duty to keep information about clients confidential.

4

On March 16, 2020, the parties conducted a telephonic meet-and confer, during which TCA agreed to produce certain documents in response to the subpoena. On April 9, 2020, TCA's counsel set a letter to counsel for 3M maintaining its objections to the subpoena, but producing certain documents. On May 7, 2020 TCA produced additional documents responsive to the subpoena and included a privilege log. On May 20, 2020, TCA revised its privilege log to give further explanation for the redactions that were made and sent the revised privilege log, along with a letter maintaining all objections on the basis of attorney-client privilege and attorney work product, to 3M on May 20, 2020. 3M then filed this motion.

## Argument

**I.   The Subpoena Seeks Attorney-Client Privileged Communications Made Through an Agent of the Attorney**

The subpoena requested, "All documents relating to any Claimant, including any information collected from any Claimant, analysis of the scope or amount of any Claims, database information, forms, presentations, spreadsheets, audio or visual recordings, photographs, images, and other [sic] any other data or data compilations." If this request were sent to the plaintiff's law firm directly, there would be no argument here: the information sought would be plainly privileged. The question is whether that privilege is lost, or never applied, if the communication is made through an agent of the lawyer. Top Class Actions respectfully contends it is not.

**A.   Information Provided by a Potential Client to a Lawyer Is Privileged**

Users of the website use the forms on the website to communicate with a lawyer about their potential claim or potential lawsuit. Again, if the putative plaintiff used the lawyer's own website, there would be no issue here. The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (hereinafter "RESTATEMENT") provides:

> Except as otherwise provided in this Restatement, the attorney-client privilege may be invoked as provided in § 86 with respect to:
>
> (1) a communication

5

>   (2) made between privileged persons
>   (3) in confidence
>   (4) for the purpose of obtaining or providing legal assistance for the client.

Privileged persons, as referenced in Section 68(2), include potential clients: "Privileged persons within the meaning of § 68 are the client (including a ***prospective client***), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." *Id.* § 70 (emphasis added). And "[a] communication is in confidence within the meaning of § 68 if, at the time and in the circumstances of the communication, the communicating person reasonably believes that no one will learn the contents of the communication except a privileged person as defined in § 70 or another person with whom communications are protected under a similar privilege." *Id.* § 71.

Likewise, the ethics rules provide that a communication from a prospective client may not be revealed. *See, e.g.*, ABA Model Rule 1.18(a)-(b): Duties to Prospective Client ("A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client. Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.").

A potential client filling out a form on a lawyer's website to obtain representation is making a privileged communication. In *Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1106 (9th Cir. 2005), Plaintiffs sued the manufacturer of Paxil, SmithKline Beecham Corporation, and the plaintiffs' lawyers used a form on their website to gather possible clients. As in the 3M case, "Plaintiffs did not initiate contact with their lawyers by walking into the law office. Instead, the law firm posted a questionnaire on the internet, seeking information about potential class members for a class action the law firm contemplated." *Barton*, 410 F.3d at 1106. The law firm attempted to make plain that no attorney-client relationship would be formed by the form submission; it stated that the form was for "information gathering."

Defendant sought the information provided in the forms in discovery.

In reviewing whether the privilege applied, the Ninth Circuit focused on what the client would expect in filling out the form. The court agreed that the law firm's disclaimer language was vague, but held that the ***client*** had not waived privilege through a vague disclaimer: "But the vagueness and ambiguity of the law firm's prose does not amount to a waiver of confidentiality by the client. Our focus is on the clients' right, not the lawyers.'" *Id*. at 1111. "The questionnaire is designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form." *Id*. The court continued, "The questionnaire is ambiguous, but the plaintiffs should not be penalized for the law firm's ambiguity. It is their privilege, not any right of the lawyers, that is at stake. A layman seeing the law firm's internet material would likely think he was being solicited as a potential client." *Id*. at 1110.

Here, the potential plaintiffs filling out TCA's form had an even stronger expectation that their communications would be privileged. In the *Barton* case, the form stated, "The purpose of this questionnaire is to gather information about potential class members… We will also use your contact information to keep you updated on developments of the litigation." *Id*. at 1107 n.4. TCA's form, to the contrary, invites website users to fill out a form to connect with an attorney and specifically provides that the information is shared with attorneys to facilitate formation of an attorney-client relationship. The only issue for the court is whether this privilege is lost because the form appears on topclassactions.com instead of the lawyer's own website.[1]

---

[1] Because TCA's website provides a form for users to fill out that is directly transmitted to the sponsoring law firm, and the information is stored on a TCA database solely for use in connection with the marketing, TCA is really a form of "cloud computing." As the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility explained, "If an attorney uses a Smartphone or an iPhone, or uses web-based electronic mail (e-mail) such as Gmail, Yahoo!, Hotmail or AOL Mail, or uses products such as Google Docs, Microsoft Office 365 or Dropbox, the attorney is using "cloud computing." (Ex. D, PA Bar Op. 2011-200.) No one would seriously contend that use of Office 365 waives the privilege. Here, TCA's form submissions go directly to the law firm, and it keeps a confidential record for the law firm. It does not share that

B. **A Potential Client Filling Out a Form With a Lawyer's Agent Is Entitled to Privilege Protection**

A putative class member or potential plaintiff communicating through TCA's website would have the expectation of privilege, as examined through the lens of the Restatement.

### 1. A Form Submission Is a Communication

The form submission is a communication. RESTATEMENT § 68(1). Website users submit their information to have their information evaluated by an attorney and to see if they can participate in a class action or other action.

### 2. The Form Submission Is Made Between Privileged Persons

The communication is made between privileged persons, as potential clients making communications to lawyers are privileged persons. *Id*. § 68(2). Section 70 of the RESTATEMENT makes reference to agents as "privileged persons": "Privileged persons within the meaning of § 68 are the client (including a prospective client), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." RESTATEMENT § 70.

An agent of the lawyer is one employed by the lawyer "to assist the lawyer in the rendition of professional legal services." *See id*. cmt. g (citing Revised Uniform Rules of Evidence, Rule 502(a)(4) (1974)). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or ***those reasonably necessary*** for the transmission of the communication."). *Id*. (quoting Rule 502(a)(5)). Here, TCA's website is simply a reasonably necessary means of transmission of the communication.

Use of a third-party's website, or even a form available on social media, is a logical evolution of the process by which lawyers find clients. This evolution has been acknowledged by the courts. As the Ninth Circuit stated in *Barton*, "There would be no

---

data with anyone else or review the data for any purpose other than communicating with the law firm. (Ex. A, Williams Decl. ¶¶ 6, 10, 11.) It is providing its technology to the lawyer.

room for confusion [about waiver of the privilege] had the communication been in the traditional context of a potential client going into a lawyer's office and talking to the lawyer. The changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles." *Barton,* 410 F.3d at 1112. The next change in law and technology is that law firms are using third parties to assist them in soliciting clients on the internet.

The agency exception to waiver applies to disclosures of information to agents of the attorney when the communication is necessary for the provision of legal advice. In *In re Int'l Oil Trading Co.*, 548 B.R. 825 (S.D. Fla. 2016), the court found that litigation funders, who provide financial assistance to law firms to prosecute claims, are considered agents within the privilege. In making this holding, the court reviewed the Florida statute on privilege, which protects communications with those "to whom disclosure is in furtherance of the rendition of legal services to the client." The court concluded that the privilege protects "communications with any party who assists the client in obtaining legal services." *Id.* at 834. The court concluded litigation funders "fall in this category." *Id.* Litigations funders fell into the agency exception because without litigation funders, parties might have reduced or no ability to pursue their claims. *See id*. at 835.

Here, TCA provides a service that is analogous. Class actions exist, in part, to provide a remedy for small wrongs made on a large scale. Class actions are often useful when an individual action might not be worth pursuing. This is exactly the sort of claim in which parties might have reduced or no ability to pursue their claims without the help of an agent. TCA helps the parties become aware that a class action is being investigated or pursued and facilitates the participation in that action.

While TCA is not a lawyer referral service, another analogy can be made in that TCA, like a lawyer referral service, assists lawyers and clients in connecting with each other. Lawyer referral services have been held to be within the privilege. The American Bar Association's Rule XIV of the Model Supreme Court Rules Governing Lawyer Referral and Information Services states: "A disclosure of information to a lawyer

referral service for the purpose of seeking legal assistance shall be deemed a privileged lawyer-client communication." The purpose of this rule is illustrated in the comments, which provide that "since a client discloses information to a lawyer referral service for the sole purpose of seeking the assistance of a lawyer, the client's communication for that purpose should be protected by lawyer-client privilege." Rule XIV cmt. Consistent with the Model Rule, several states have enacted rules that prohibit the disclosure of information provided to lawyer referral services if the purpose of the communication is to seek legal assistance. *See* California Evidence Code § 996(a); O.R.S. 40.225; N.Y. Judiciary Law App. at 498; Utah Evid. R. 504. In every state where these rules have been enacted, the purpose for such rules is the same—to encourage the public to seek legal assistance.

By protecting communications between clients and lawyer referral services, potential clients are encouraged to seek legal assistance and advice. This public policy of encouraging the public to seek legal counsel can best be served by holding that the communications between the claimants and TCA are confidential communications protected by attorney-client privilege. To hold otherwise could have a chilling effect on individuals who legitimately need legal assistance but do not know how to go about obtaining it.

### 3. The Potential Client Has an Expectation of Confidentiality

The potential client or website user has a reasonable expectation that the communication made via the website form is made in confidence. The form provides: "[I]t is intended that the information will be protected by attorney-client privilege…" *Id.* § 68(3). The Legal Notice on the website provides, "The information you provide to us to be transmitted to lawyers or law firms is considered confidential by TCA and is transmitted for purposes of possibly establishing an attorney-client relationship with the law firm." *See* Legal Notice, available at https://topclassactions.com/top-class-actions-legal-notice/ (last visited July 1, 2020).

### 4. The Communication Is Made for the Purpose of Obtaining Legal Assistance

Last, as website users are filling out the form to see if they "qualify" to join a

10

class action and to be contacted by an attorney, the communication is made "for the purpose of obtaining or providing legal assistance for the client." *Id*. § 68(4).

## II.    TCA, As the Lawyer's Agent, Must Protect Client Confidentiality

3M does not dispute that a lawyer has a duty of confidentiality to protect information about the client. "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent." ER 1.6(a). This duty is broad. It even extends to the client's name, not just the content of the communication. It applies during a consult (before the lawyer is retained) and after the representation has ended. *See* ER 1.18(a)-(b) ("A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client. Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information...").

3M also does not dispute that the agent of a lawyer owes a duty of confidentiality. *See, e.g.*, RESTATEMENT § 60 (2000) ("Agents of a lawyer assisting in representing a client serve as subagents and as such independently owe a duty of confidentiality to the client."). 3M, instead, nitpicks Section 60 and argues that because TCA is not "assisting in representing a client," the lawyer's duty of confidentiality does not extend to TCA.

This argument is contrary to public policy. A lawyer has a duty of confidentiality to a prospective client. But under 3M's theory, the lawyer's agent, apparently, does not have that same duty, unless and until the representation has commenced. This means if a lawyer employs an assistant to answer the phone, a virtual receptionist, a stenographer, an interpreter, or any other traditional "agent" to assist with intake, these agents would have exactly zero duty to keep the client information confidential. Notably, comment e to the RESTATEMENT makes plain that "The duty of confidentiality continues so long as the lawyer possesses confidential information." RESTATEMENT § 60 cmt. E; *see also* RESTATEMENT (SECOND) OF AGENCY § 395 ("[A]n agent is subject to a duty to the principal not to use or to communicate information confidentially given

11

him by the principal or acquired by him during the course of or on account of his agency…").

The duty of confidentiality exists to protect clients and the public. Confidentiality encourages disclosure of information by a client seeking the assistance of a lawyer. *See* ER 1.5 cmt. 2 ("The public is better protected if full and open communication by the client is encouraged than if it is inhibited. The client is thereby encouraged to seek legal assistance…").

3M then argues that TCA itself alerts users the information is not confidential, but this is not the case. TCA appropriately tells website users that TCA is not a law firm—this much is true. But the web pages advertising the 3M case also say, "Fill out the form on this page now for a free, immediate, and confidential case evaluation." After the form, the page provides that information will be submitted to law firms "to facilitate formation of an attorney-client relationship. As such, it is intended that the information will be protected by the attorney-client privilege…" (Ex. B.) TCA also shares an appropriate disclosure that the web page is attorney advertising, that it is not a lawyer, and that, "Any information you submit to Top Class Actions does not create an attorney-client relationship and might not be protected by attorney-client privilege. Instead, your information will be forwarded to an attorney or claims processing firm for the purpose of a confidential review and potential representation. You should not use this website to submit time-sensitive, or privileged information." *Id.* This is certainly an appropriate disclaimer given that 3M has attempted to gather access to user's information submitted through this form. But the question for the Court again comes back to the lawyer's duty and the client's expectation. The client is submitting the information to a lawyer for a case evaluation. This is confidential information. The fact that TCA included a disclaimer does not make it ***not*** confidential.

Last, 3M argues TCA could sign onto the protective order. TCA does not have informed consent to produce confidential information. The RESTATEMENT § 62 provides, "A lawyer may use or disclose confidential client information when the client consents after being adequately informed concerning the use or disclosure." As an

agent of the lawyer, TCA also would have to get informed consent to disclose the information. A protective order does not solve this problem.

### III. The Subpoena Seeks Documents Protected as Attorney Work-Product

3M is also attempting to use a subpoena to gain access to the mental impressions and opinions of the plaintiffs' lawyers about the 3M case. This end-run around work product protection should not be condoned by this Court.

3M argues that TCA was engaged solely to generate leads, and was not engaged to "provide consultation regarding preparation of any claims for trial." (Doc. 1 at 9.) 3M does not correctly state TCA's involvement. As stated above, a lawyer is responsible for the content of attorney advertising; as such, law firms review the proposed web page content before it is published on TCA's web site. TCA has emails between its writers and editors and the lawyers responsible for the content providing comments, edits, and other thoughts on the content and campaign. Here, TCA redacted communications between TCA and the law firms relating to the attorney advertising. TCA produced those emails that did not reflect the lawyer's mental impressions or opinions of the content.

The advertising in this case is meant to inform potential claimants that they may have claims and invite those who may be affected to participate. Here, TCA's marketing was meant to inform veterans that if they had hearing loss and if they served in the military at a particular time, they might have a claim based on defective ear plugs. TCA's writers can draft the content, but the lawyers are masters of the claim and strategy. The lawyers' comments on the marketing reflects their opinions of the claim and strategy. They must be permitted to keep their comments confidential.

3M further argues, seemingly, that work product protection only applies if it attaches to a particular claimant. (Doc. 1 at 9.) But this Court has already upheld a different standard for evaluating work product protection, even for multiple claimants. In *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, this Court considered whether plaintiff waived work product protection by sharing litigation funding agreements

13

with litigation funders. Judge Campbell noted that the work product doctrine existed to protect an attorney's work from discovery by an opponent:

> Work product protection is not waived merely because work product is shared with another person or entity. As courts have explained:
>
> "The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent."

*Cont'l Circuits LLC v. Intel Corp.,* 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020) (quoting *Bickler v. Senior Lifestyle Corp*., 266 F.R.D. 379, 383-84 (D. Ariz. 2010)). "Because the work product doctrine protects against disclosure to potential adversaries and not the world in general, courts have recognized that work product protection may be lost when a disclosure substantially increases the opportunity for potential adversaries to obtain the information." *Id*.; *see also* WRIGHT, MILLER, KANE & MARCUS, 8 FED. PRAC. & PROC. CIV. § 2024 (3d ed.) (disclosure "does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information"). Here, an email between TCA and the advertising law firm does not "substantially increase" the opportunity for the law firm's adversary to obtain the information.

In *Cont'l Circuits,* the court further noted, "Courts also hold that disclosure to a person with interest common to that of attorney or client is not inconsistent with intent to invoke the work product doctrine's protection and would not amount to waiver. In the context of work product, common interest is more broadly construed to include disclosure to third parties." *Id*. at 1022; *see also In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981).

("Disclosure to person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver.") Here, likewise, Top Class Actions keeps the communications with law firms confidential. It has a common interest with the law firm, in that the law firm and TCA shared information for the limited purpose of marketing information about the case to potential clients. *See California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014) ("In the work product context, common interests are not construed so narrowly as to limit the exception only to co-parties. The shared interest may be only financial or commercial in nature.").

A law firm should be able to share its mental impressions and opinions to ensure that its advertising is accurate, not misleading, compliant with the ethical rules, and also serves its purpose to share information about the lawsuit in a way that advances the lawyer's goals. Here, TCA exchanged communications with the law firms, in confidence, to effectuate a shared purpose: to help the law firm and clients find each other. These communications did not increase the possibility of 3M's obtaining the communications. Work product protection has not been waived.

## IV.   3M's Reliance on the GM Case Is Misplaced

3M claims that the issues presented by this motion have been previously litigated and a judicial determination reached. Not so.

In the *In Re General Motors Ignition Switch Litigation*, TCA argued that the subpoena was burdensome and that GM was able to obtain the same information from lead counsel for the plaintiffs as they could from TCA. (*See* Ex. C (TCA's Response to General Motors' Motion to Compel.) Despite 3M's assertion, the issue of attorney-client privilege, confidentiality, and attorney work-product were not litigated in the GM motion to compel. The only place this argument appears is in a meet-and-confer email from counsel for TCA stating counsel's "concern": "As I indicated previously, we have concerns about voluntarily providing information from third parties without first getting

15

their consent, or giving them the option to fight the disclosure. TCA is in the process of contacting them to get their consent and waiting to hear back. Our legal basis for doing so is that we have objected to the subpoena based on relevance, over breadth, and undue burden, among other things." (Ex. D, email.) The district court, accordingly, gave this argument short shrift: "The Court finds unpersuasive TCA's concerns about providing third-party information that was submitted on its publically available website given that the information is neither confidential nor privileged. (Docs. 1 at 8, 1-1 at 18.)" But the district court, respectfully, was not presented with the argument or the facts surrounding how TCA acts as an agent. The form submissions go directly to the attorney, and, as discussed in detail, the potential client would expect these communications to be privileged.

In addition, TCA's website is not the same as it was when the GM suit was decided. TCA has added language to its webpages and forms that make plain that the consumer or user has an expectation that the information submitted is privileged. This Court should evaluate TCA's website and arguments based on the submissions made in the present case, not based on the GM case, as the privilege, confidentiality, and work product issues were not actually litigated. *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("Another prerequisite to the application of collateral estoppel is that the disputed issue must have been actually litigated in the prior proceeding."). Counsel's remark in a meet-and-confer email—an argument not even raised in the briefs—cannot suffice to meet the "actually litigated" requirement.

**V. 3M Makes No Reasonable Relevance Arguments**

3M tries to, but cannot, support its request for information about the financial interests of TCA. It asks for documents reflecting "any financial interest" any other party has in TCA—a non-party. It asks for documents relating to TCA's ownership. Again, TCA is a non-party. TCA rightly objected that these requests about TCA's financials

16

could have exactly zero likelihood of leading to admissible evidence in a case asking if 3M made defective ear plugs for veterans.

3M makes a half-hearted attempt to claim relevance in one sentence: that "The ownership or financial interest that a Plaintiff's law firm may have in TCA bear on the potential bias of Plaintiff's counsel and the cases selected for inclusion in MDL 2885." (Doc. 1 at 10.)

This is a head-scratcher.

TCA provides advertising and helps firms generate leads. As 3M itself claims, TCA's "singular role was to generate leads." (Doc. 1 at 9.) 3M does not explain what bias it thinks it might uncover in Plaintiff's counsel, and 3M does not explain how a financial interest in TCA would impact "the cases selected." Simply put, TCA's ownership or financial interests are none of 3M's business, and more importantly, do not affect the 3M Ear Plug litigation in even a miniscule way.

**Conclusion**

Based on the foregoing, TCA respectfully requests that this Court deny 3M's Motion to Compel.

RESPECTFULLY SUBMITTED this 9th day of July, 2020.

                                              THE WILKINS LAW FIRM, PLLC

                                              By: /s/ Amy M. Wilkins
                                                  Amy M. Wilkins
                                                  Laura C. Brosh
                                                  3300 N. Central Ave., Ste. 2600
                                                  Phoenix, AZ  85012
                                                  Phone:  602-795-0789
                                                  awilkins@wilkinslaw.net
                                                  lbrosh@wilkinslaw.net

                                           *Attorneys for Top Class Action*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2020, I electronically transmitted the foregoing document to the Clerk of the U.S. District Court using the CM/ECF system for filing and service to all parties/counsel registered to receive copies in this case.

By /s/ Cheryl Hays
Cheryl Hays