Maria Pellegrino Rivera (State Bar No. 018124)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862 2200
Email:mrivera@kirkland.com

Tabitha J. De Paulo (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Tel.: (713) 836-3600
Email: tabitha.depaulo@kirkland.com

*Attorneys for 3M Company,*
*3M Occupational Safety, LLC,*
*Aearo Technologies LLC,*
*Aearo LLC, Aearo Holding LLC,*
*and Aearo Intermediate, LLC*

**IN THE UNITED STATE DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 3M COMPANY et al.<br><br>    Plaintiffs,<br><br>vs.<br><br>TOP CLASS ACTIONS LLC,<br><br>    Defendant. | Case No. 2:20-MC-00031-MTL<br><br>**REPLY IN SUPPORT OF 3M'S MOTION TO COMPEL DISCOVERY FROM TOP CLASS ACTIONS, LLC** |
| IN RE: 3M COMBAT ARMS EARPLUG LIABILITY LITIGATION<br><br>CASE NO. 3:19-md-02885-MCR-GRJ<br><br>NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION | |

3M Company, 3M Occupational Safety, LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate, LLC and Aearo, LLC ("3M") submits this reply memorandum in support of its motion to compel (Dkt. No. 1) ("Motion")[1] Top Class

---

[1] Terms used but not otherwise defined herein shall have the meanings

1 Actions ("TCA") to produce or otherwise make available documents and information
2 requested in 3M's Subpoena.

### I. The Subpoena Does Not Seek Attorney-Client Privileged Communications.

TCA cannot satisfy its burden[2] to establish that the documents sought by the Subpoena are subject to the attorney-client privilege because the communications at issue were not made (1) by a client to an attorney, (2) with the intention that the communication would be kept confidential, (3) for the purpose of seeking legal advice. *Wichansky v. Zowine*, 2015 WL 5693521, at *1 (D. Ariz. Sept. 29, 2015); *see also Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993) ("[T]o be privileged, the communication must be made to or by the lawyer for the purpose of securing or giving legal advice, must be made in confidence, and must be treated as confidential."). The attorney-client privilege "must be strictly construed." *Miller*, 2014 WL 11514550, at *2.

### A. TCA Is Not An Attorney Or An Attorney's Agent.

TCA does not contend that it is an attorney. (*See* Dkt. No. 10 at 5.) Instead, TCA asserts that communications submitted by potential claimants through its website are entitled to protection of the attorney-client privilege because TCA is an agent of plaintiffs' lawyers. (*See id.* at 8.) Not so. To qualify as an agent for privilege purposes, the agent must "assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Indeed, TCA's own website plainly states that it is not engaged in assisting the attorney in providing legal advice,[3] and TCA makes clear in its response to 3M's motion that it is does *not* assist in providing legal advice. (*See* Dkt. No. 10 at 7.) Rather, TCA explains that questionnaires submitted by prospective claimants are "stored on a TCA

---

ascribed to such terms in the Motion.

[2] *See Miller v. York Risk Servs. Grp.*, 2014 WL 11514550, at *2 (D. Ariz. July 22, 2014) ("The party asserting the attorney-client privilege has the burden of proving the attorney-client privilege applies.").

[3] *See* Dkt. No. 1 at 7 (TCA "is not a law firm," "[t]he information contained [t]herein is not legal advice," and "[a]ny information you submit to [TCA] does not create an attorney-client relationship and might not be protected by attorney-client privilege.").

1   database solely for use in connection with [ ] marketing . . . ." (*See id.* at 7–8 n.1.) TCA
2   cannot have it both ways. It cannot on the one hand diminish its own role in arguing that
3   "it is really a form of 'cloud computing'" (*id.*), and on the other than hand maintain that it
4   "assist[s] the attorney in providing legal advice" and is therefore subject to attorney-client
5   privilege. *Richey*, 632 F.3d at 566.

6         Notably, instead of addressing 3M's cited cases from this District and the Ninth
7   Circuit, TCA relies on the Restatement (Third) of the Law Governing Lawyers §§ 68, 70,
8   and inapposite case law from outside this circuit to argue that attorney-client privilege
9   applies. (Dkt. No. 10 at 8.) In the one case in this District that addresses § 70 of the
10  Restatement, cited by 3M in its Motion, (Dkt. No. 1 n.11), this Court found that defendants
11  failed to satisfy their burden to show that inclusion of a third party on an email list was
12  "reasonably necessary" for transmission of the confidential communication in furtherance
13  of rendering legal services. *Melendres v. Arpaio*, 2015 WL 13649412, at *4 (D. Ariz. Apr.
14  2, 2015). Instead, "[d]efendants [] cited no precedent for the principle that the attorney-
15  client privilege is preserved where a person with no reason to have access to a confidential
16  document is nevertheless intentionally included on a circulation list." *Id.* Even if this
17  District has adopted the Restatement standard (which is highly questionable given the
18  dearth of case law), TCA cannot show that disclosure of information to it is "reasonably
19  necessary" for the transmission a communication made in furtherance of the rendition of
20  legal advice. Rather, the claimants could simply call the lawyer's office directly, and
21  exclude marketing call centers like TCA that aggregate and sell "leads" to plaintiffs'
22  lawyers. Inclusion of TCA or another call center is dispositive of the issue of privilege
23  because "[t]he purpose of maintaining confidentiality is defeated when privileged
24  communications are disseminated to a third party," such as TCA. *Id.*

25        TCA's reliance on *In re Int'l Oil Trading Co., LLC* is similarly misplaced. *See* 548
26  B.R. 825 (S.D. Fla. 2016). Setting aside that this case was not decided in this circuit, and
27  TCA has not cited a single Arizona case applying such "agency exception" to the waiver
28  of attorney-client privilege, *Int'l Oil* is distinguishable on its facts. Importantly, the third

party in *Int'l Oil* was a litigation funder. *Id.* at 829. Litigation funders typically employ attorneys to assess the viability of legal claims in order to determine whether to provide funding for a party to pursue litigation, which, absent funding, the party may have "no ability to pursue." *Id.* at 835. As the *Int'l Oil* court notes, the litigation funder "played a near-daily role in [the] litigation efforts, providing funding and ***assisting with legal and strategic decisions***." *Id.* at 829 (emphasis added). The same is not true of TCA, which merely aggregates "leads," sells them to an attorney, and then has no role in the representation on a go-forward basis.

Even applying the standard set forth in *Int'l Oil*, TCA's privilege claim fails. In arguing that its role is analogous to litigation funders, TCA breezes past the threshold requirement that the agency exception to "waiver of the attorney-client privilege protects from discovery the ***necessary communications*** with such parties." *Int'l Oil Trading*, 548 B.R. at 833 (emphasis added). What TCA fails to explain is how submission of a form by a potential claimant through its website is a "necessary communication," and why the claimant could not simply call a lawyer directly and omit the middle-man advertiser. Instead, TCA glosses over this by arguing that "[t]his is exactly the sort of claim in which parties might have reduced or no ability to pursue their claims without the help of an agent" and "TCA helps the parties become aware that a class action is being investigated or pursued and facilitates the participation in that action." (Dkt. No. 10 at 9.) In contrast to litigation funders, without which some plaintiffs would be "handcuffed" and financially unable to pursue their claims. *See Int'l Oil*, 548 B.R. at 835. TCA is not "essential to the provision of legal advice" to the ***clients***, *id.*, but instead, TCA provides ***law firms*** with marketing services to generate leads for new clients. (Dkt. No. 10 at 7–8 n.1.) Accordingly, TCA cannot meet its burden to show that potential claimants' communications transmitted by it are "necessary" or "reasonably necessary" for the provision of legal advice.

### B. Potential Claimants Do Not Submit Forms To TCA With an Expectation of Confidentiality

Communications between TCA and potential claimants were not made with the intent that the communications be kept confidential. *See Wichansky*, 2015 WL 5693521, at *1. Notably, in 3M's Motion, it identified certain warnings previously contained on TCA's website that potential claimants "should not use this website to submit confidential, time sensitive, or privileged information" and that "[c]ontent and/or information provided by User to TCA through this Website is considered non-confidential and non-proprietary." (Dkt. No. 1 at 5–6.) Apparently recognizing that this language would destroy any assertion of confidentiality, TCA has changed its website, which now provides that "[c]ontent and/or information provided by User to TCA through this website is considered confidential and proprietary."[4] But as TCA admits, its website still tells claimants that they "should not use this website to submit time-sensitive, or privileged information." (Dkt. No. 10 at 12.) Given these and the other warnings that abound on TCA's website, potential claimants do not submit forms with the intent that the information will be kept confidential.

TCA further argues that its services are analogous to a potential client submitting a questionnaire on a lawyer's website to obtain legal representation, and is thus protected by attorney-client privilege. (*See* Dkt. No. 10 at 6.) But the sole case relied on by TCA in support of this argument—*Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*—is inapposite. 410 F.3d 1104, 1108 (9th Cir. 2005). **First**, the court's decision in *Barton* was based on California privilege law. *See id*. As stated in *Barton*, "[p]rospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege ***under California law***." *Id.* at 1111 (emphasis added). TCA has cited nothing suggesting that California law should apply here.

**Second**, as TCA recognizes, the questionnaires at issue in *Barton* were posted on a *lawyer's* website, not a third party entity. *See id.* at 1106–07. This distinction is important

---

[4] *See, e.g.*, Ex. 15 (archived screenshots of TCA's Legal Notice page dated March 29, 2020); Ex. 16 (archived screenshots of TCA's Legal Notice page dated Decemer 16, 2019).

5

because, as the court in *Barton* recognized, "[a] layman seeing the law firm's internet material would likely think he was being solicited as a potential client." *Id.* at 1110. The same cannot be said of TCA's website.[5] Indeed, many of TCA's web pages include no reference to any particular law firm or lawyers, and those that do specifically note that "Top Class Actions is not a law firm." (Dkt. 10, Ex. B, at 9.)

Finally, TCA tries to explain away this Court's decision in the *In re General Motors Ignition Switch Litigation*. (Dkt. No. 10 at 15–16.) But not only did this Court reject TCA's privilege and confidentiality assertions in *General Motors*, the United States District Court for the Southern District of New York similarly rejected TCA's motion to quash on privilege grounds. In its letter brief, General Motors argued that information submitted by plaintiffs through TCA's website was not privileged on the same facts as here: (1) the TCA website warns plaintiffs that TCA is not a law firm and that information submitted through its website is "non-confidential and non-proprietary," and further cautions users that TCA "cannot guarantee that the information you submit to us will not end up in the hands of the company or person that you are complaining about;" and (2) "TCA's online forms/questionnaires expressly require users to agree that any information submitted 'does not create an attorney-client relationship' and 'is not confidential or privileged and may be shared.'"[6] The court denied TCA's motion to quash for "substantially for the reasons set forth in . . . New GM's responsive letter" and concluded that TCA "fail[ed] to establish that the communications at issue with the third-party TCA [were] privileged[.]"[7] For good reason. Because TCA is not an attorney, or an agent that assists attorneys in providing legal

---

[5] *See* Top Class Actions, *3M Earplug Lawsuit Investigation Into Military Hearing Loss, Tinnitus*, available at: https://topclassactions.com/lawsuit-settlements/military/870889-3m-ear-plugs-class-action-lawsuit-investigation-into-military-hearing-loss-tinnitus/.

[6] Ex. 17, New GM's Letter Brief in Opposition to Motion to Plaintiffs' Motion to Quash, *In re General Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543 (JMF) (S.D.N.Y. May, 16, 2017)

[7] Ex. 18, Order Denying Plaintiffs' Letter Motion to Quash Third-Party Subpoena Served on Top Class Actions LLC, *In re General Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543 (JMF) (S.D.N.Y. May, 19, 2017).

1  advice, and any information submitted by potential plaintiffs is not submitted in
2  confidence, TCA's objections based on attorney-client privilege must be overruled. *See,*
3  *e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012).

### C. The Communications Did Not Seek Legal Advice

The questionnaires submitted by potential claimants through TCA's website are factual in nature, not seeking legal advice. The form includes questions regarding (1) time periods of military service, (2) whether the claimant was issued and wore the earplugs during this time, and (3) whether they suffer any hearing loss or tinnitus. (*See, e.g.*, Dkt. No. 10, Ex. B.) These facts have not been submitted to a lawyer for the purpose of seeking legal advice, but were instead submitted to third-party non-lawyer to aggregate "leads" that are sold to an attorney. Such communications are not privileged. *See, e.g.*, *Melendres*, 2015 WL 13649412, at *3.

### II. TCA Wrongly Objects on the Basis of Client Confidentiality.

TCA improperly asserts client confidentiality as grounds to withhold documents responsive to the subpoena. TCA points to ABA Model Rule of Professional Responsibility § 1.6(a) for the proposition that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent." (*See* Dkt. No. 10 at 11.) Setting aside that TCA is not a lawyer or an agent of a lawyer, the Model Rules create an exception to the duty of confidentiality when revealing the information is necessary "to comply with other law or a court order." ABA Model Rules of Professional Responsibility § 1.6(b)(6). Here, TCA's disclosure is necessary to comply with Federal Rule of Civil Procedure 45, which sets forth the requirements for responding to a subpoena. *See* Fed. R. Civ. P. 45. Similarly, an order by this Court to produce responsive documents would provide such an exception.

Regardless, numerous courts have recognized that confidentiality does not equate to a privilege, and that it not a proper basis for objection. *See, e.g.*, *In re Application of O'Keeffe*, 2016 WL 2771697, at *3 (D. Nev. Apr. 4, 2016) (stating that "it is well settled that a concern for protecting confidentiality does not equate to privilege, and that [the

requested] information and documents are not shielded from discovery on the sole basis that [ ] they are confidential."); C*lark by Clark v. Phoenix Homes, Inc.*, 2010 WL 11583259, at *2 (M.D. Tenn. July 23, 2010) (same); *Zhou v. Pittsburg State Univ.*, 2002 WL 1932538, at *2 (D. Kan. July 25, 2002) ("Defendant, however, fails to recognize that a party may not rely on the confidential nature of documents as a basis for objection, inasmuch as '[c]onfidentiality does not equate to privilege.'"); *Hill v. Dillard's Inc.*, N2001 WL 1718367, at *4 (D. Kan. Oct. 9, 2001) ("Confidentiality does not equate to privilege."). Rather, if it so chooses, TCA can produce the information in response to the subpoena in accordance with the protective order in the case, which governs and limits the use of "confidential" material in the protection. TCA's objections on the basis of client confidentiality should be overruled.

### III. The Subpoena Does Not Seek Documents Protected as Attorney Work-Product.

None of the documents sought by the Subpoena are "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). TCA argues that 3M is attempting to "gain access to the mental impressions and opinions of the plaintiffs' lawyers about the 3M case." (Dkt. No. 10 at 13.) TCA contends that it "redacted communications between TCA and the law firms relating to the attorney advertising" but the "lawyers' comments on the marketing reflects their opinions of the claim and strategy" and must be kept confidential. (*See id.*) Conversations relating to advertising for new claimants are not "documents and tangible things that are prepared in anticipation of litigation or for trial." *See* Fed. R. Civ. P. 26(b)(3)(A). TCA's role was ***not*** to develop strategy or provide consultation regarding preparation of any claims for trial. Rather, TCA admits that the information it collects are "stored on a TCA database ***solely*** for use in connection with the marketing. (*See* Dkt. No. 10 at 7–8 n.1 (emphasis added).) That marketing effort ***may*** result in a "lead" sold to an attorney, and that attorney ***may*** thereafter file a lawsuit, but the issue of whether and how TCA is advertising to individuals who are presently ***not*** claimants in this litigation is not protected work product.

8

*Continental Circuits LLC v. Intel Corp.*, relied on by TCA, actually supports 3M's position. *See* 435 F. Supp. 3d 1014 (D. Ariz. 2020). In *Continental Circuits*, the court recognized that the Ninth Circuit employs the "because of" standard for work product. *Id.* at 1020. Under this test, a document is considered to be attorney work product if it is prepared or obtained because of litigation. *Id.* The advertising materials created by TCA and commented on by plaintiffs' law firms are not attorney work product, prepared "because of" litigation, but are instead marketing tools to gain business for law firms— done for sale to a law firm. *See Cont'l Circuits LLC*, 435 F. Supp. 3d at 1020–21 ("When there is a true independent purpose for creating a document, work product protection is less likely."); *see also S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002) (finding that documents prepared for presentation before board of directors, not in an adversarial proceeding or court were "business documents rather than documents prepared in anticipation of litigation.").

TCA's argument that it shares a common interest with plaintiffs' law firms so their communications may be withheld as work product is similarly unavailing. "[T]he work-product privilege is designed to protect mental impressions and theories of attorneys or other client representatives concerning actual or prospective litigation involving the client. Thus, although a common interest may be 'legal, factual, or strategic in character,' . . . exchanging communications and work product must further the ***legal interests*** of each client." *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 142, 75 P.3d 1088, 1100 (Ct. App. 2003); *see also Chartis Specialty Ins. Co. v. Scott Homes Multifamily Inc.*, 2015 WL 13567036, at *1 (D. Ariz. Feb. 18, 2015) ("The purpose of the common interest doctrine is to permit persons with common interests to share privileged attorney-client and work-product communications in order to coordinate their respective positions without destroying the privilege." (quotation marks and citation omitted)). TCA has no legal interest in the Combat Arms Earplug MDL. *Id.* Instead, TCA has a common financial

interest with certain law firms in advertising for potential claimants. That is not sufficient to sustain its work product objection. *See id.*[8]

### IV. Documents Pertaining to Law Firms' Financial Interests in TCA Are Relevant.

TCA objects to producing documents regarding law firms' financial interest in TCA on relevance grounds. Rule 26 allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly," and includes "any issue that is or ***may be*** in the case." *Paul Johnson Drywall, Inc. v. Phoenix Ins. Co.*, 2014 WL 1764126, at *1 (D. Ariz. May 5, 2014). As a result, relevance objections are rarely a basis to withhold otherwise permissible discovery. For that reason, the Court should reject TCA's relevance argument here.

Indeed, the documents regarding law firms' financial interests in TCA are relevant for a number of reasons. For example, such documents may (i) help Defendants identify which advertisements were seen by which firms' clients, (ii) examine individual plaintiffs on the particular advertisements they saw that triggered their interest in bringing litigation against Defendants, and (iii) address issues of what "case vetting" individual law firms have done prior to inclusion of their inventory in the MDL, which issue is relevant to certain procedural issues in the MDL. And even if not presently relevant (they are), such documents may also become highly relevant to the extent that plaintiffs' firms assert that the purported defects in the product can be demonstrated through the volume of plaintiffs that have joined the MDL. In that case, Defendants would be entitled to point out that the volume of cases in the MDL stems from, among other things, advertising efforts of certain lawyers or law firms, including through paid lead-generators such as TCA.

---

[8] *Miller*, 2014 WL 11514550, at *2 ("The common interest doctrine affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider dissemination of that information." (emphasis added)).

**CONCLUSION**

For all the foregoing reasons, 3M respectfully requests that the Court grant its Motion to Compel production of documents requested in the TCA Subpoena.

Date:  July 16, 2020                                            Respectfully submitted,


                                                                                KIRKLAND & ELLIS LLP


                                                                                By: */s/ Tabitha J. De Paulo*
                                                                                Tabitha J. De Paulo (admitted *pro hac vice*)
                                                                                KIRKLAND & ELLIS LLP
                                                                                609 Main Street
                                                                                Houston, TX 77002
                                                                                Tel.: (713) 836-3600
                                                                                Email: tabitha.depaulo@kirkland.com

                                                                                *Attorneys for 3M Company, 3M Occupational Safety, LLC, Aearo Technologies LLC, Aearo LLC, Aearo Holding LLC, and Aearo Intermediate, LLC*

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Kirkland & Ellis LLP, 2049 Century Park East, Suite 3700, Los Angeles, California 90067.

I hereby certify that on July 16, 2020, I caused the attached document described as:

**REPLY IN SUPPORT OF 3M'S MOTION TO COMPEL DISCOVERY FROM TOP CLASS ACTIONS, LLC**

to be electronically transmitted to the Clerk's Office using the CM/ECF System for court filing, which will serve all counsel of record.

Executed on July 16, 2020 in Los Angeles, California.

*/s/ Manu Salas*

Manu Salas