Karen Beyea-Schroeder
(State Bar No. 021675)
Burnett Law Firm
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
Telephone: (832) 413-4410
Email: karen.schroeder@rburnettlaw.com

Bryan F. Aylstock
(*Pro Hac Vice Application Forthcoming*)
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Email: baylstock@awkolaw.com

Michael A. Sacchet
(*Pro Hac Vice Application Forthcoming*)
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Telephone: (612) 361-8220
Email: mas@ciresiconlin.com

*Attorneys for MDL Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: 3M Combat Arms Earplug Products Liability Litigation<br><br>Northern District of Florida<br>Pensacola Division | Case No. 2:20-MC-00031-MTL<br><br>**MDL PLAINTIFFS' MOTION TO INTERVENE AND MOTION TO TRANSFER OR STAY** |

Plaintiffs in the multi-district litigation *In re 3M Combat Arms Earplug Products Liability Litigation* (MDL No. 2885) ("MDL Plaintiffs") seek to intervene in this case to

assert their attorney-client and work-product privileges in the subpoenaed documents.[1] If intervention is allowed under Rule 24, MDL Plaintiffs move to transfer 3M's motion to compel to the Northern District of Florida (the "MDL court") pursuant to Rule 45(f) or 28 U.S.C. § 1407(b). Alternatively, MDL Plaintiffs move for a stay pending transfer by the Judicial Panel on Multidistrict Litigation ("JPML"). 3M has recognized in every other subpoena-related matter arising from the MDL that transferring miscellaneous discovery matters to the MDL court is necessary to preserve judicial resources and avoid inconsistent rulings. The same is true here.

## BACKGROUND

Earlier this year, 3M issued a subpoena duces tecum out of the MDL court in the Northern District of Florida to TCA. Dkt. 1-1. The subpoena sought, among other things, "documents related to any prospective claimants' submissions to TCA's website" and "documents and communications between plaintiffs' law firms and TCA relating to prospective plaintiffs in MDL 2885." Dkt. 1 at 2. 3M subsequently initiated this miscellaneous action and moved to compel a response to its subpoena. Dkt. 1.

TCA and 3M have filed several briefs addressing the privileged nature of the subpoenaed documents. Dkts. 1, 10, 12. At the Court's request, Dkt. 22, the parties filed supplemental briefs addressing TCA's standing to assert the attorney-client and work-product privileges, Dkts. 23, 29, 30, 31. A status conference is scheduled for September 21, 2020. Dkts. 28, 34.

---

[1] MDL Plaintiffs include all persons who have filed cases in MDL 2885 and pursued legal advice or assistance through Top Class Actions LLC ("TCA").

1  From the start, 3M recognized the relationship between this miscellaneous action
2  and MDL 2885. *See* Dkt. 1; *see also In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
3  366 F. Supp. 3d 1368 (JPML 2019). The very first page of 3M's memorandum in support
4  of its motion to compel concedes "[t]he Subpoena arises out of multidistrict litigation
5  pending before the Honorable M. Casey Rogers in . . . the Northern District of Florida[.]"
6  Dkt. 1 at 1. 3M has sought coordinated discovery and pretrial proceedings before the
7  MDL court in other recent subpoena-related actions across the country. *See, e.g.*, Ex. 1
8  (9/9/2020 3M Mot. to Transfer in D. Alaska); Ex. 2 (9/9/20 3M Mot. to Transfer in W.D.
9  Tex.); Ex. 3 (9/4/20 3M Mot. to Transfer in M.D. Fla.).

10  Though 3M agrees its motion to compel "arises out of" the MDL, Dkt. 1 at 1, it
11  did not notify the JPML of this related action. *See* JPML Rule 7.1(a) ("Any party or
12  counsel in actions previously transferred under Section 1407 *shall promptly notify* the
13  Clerk of the [JPML] of any potential tag-along actions in which that party is also
14  named[.]") (emphasis added). Plaintiffs' Leadership Counsel in MDL 2885 therefore
15  filed a Notice of Potential Tag-Along Action with the JPML. *See* Dkt. 25-1. The JPML
16  subsequently issued a Conditional Transfer Order ("CTO"). Dkt. 33-1. 3M filed a Notice
17  of Opposition to the CTO, Dkt. 32, and the JPML issued a briefing schedule on
18  September 8, 2020, Ex. 4.

19  3M's forthcoming motion to vacate the CTO will not be fully briefed until
20  October 20, 2020. *Id.* Although this Court rescheduled the September 21 hearing on 3M's
21  motion to compel, it has not yet stayed the matter. *See* Dkts. 28, 34. MDL Plaintiffs thus
22  move to intervene to assert their privilege interest in the subpoenaed documents. MDL
23

Plaintiffs also request transfer pursuant to Rule 45(f) or 28 U.S.C. § 1407(b). In the alternative, MDL Plaintiffs move to stay this case pending the JPML's transfer decision.

## ARGUMENT

### I. Motion to Intervene Under Rule 24

#### A. Legal Standard

Rule 24(a) governs intervention as a matter of right. It requires the Court to permit "anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair of impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also* Fed. R. Civ. P. 19(a)(1)(B)(i). Rule 24(b) governs permissive intervention. It allows the Court to permit "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

#### B. Argument

MDL Plaintiffs move to intervene under Rule 24(a)(2) to assert their interest in the subpoenaed communications at issue here. *See* Fed. R. Civ. P. 24(a)(2). They intend to assert the attorney-client and work-product privileges. At this time, MDL Plaintiffs need not prove that the documents are privileged to demonstrate that intervention is warranted. *See Sun Sky Hospitality LLC v. U.S. Dept. of Agriculture*, 2018 WL 5425803, at *2 & n.3 (D. Ariz. Oct. 29, 2018). They need only make a colorable claim of privilege. *See, e.g.*, *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege qualify as sufficient interests to ground intervention as of right."); *see also United States v. AT&T Co.*, 642 F.2d 1285, 1291

(D.C. Cir. 1980) ("[T]he issue of waiver . . . goes to the merits of this case, not to the threshold question of intervention").

The information that MDL Plaintiffs shared with TCA was communicated with the understanding that it would be transmitted to an attorney and that it was protected by the attorney-client privilege. *See* Dkt. 17 at 4 (citing *United States v. Richey*, 632 F.3d 559 (9th Cir. 2011)). MDL Plaintiffs also communicated this information in anticipation of litigation under the work-product doctrine. *See id.* (citing Fed. R. Civ. P. 26(b)(3)(A)). Given 3M's position that TCA does not have standing to assert the attorney-client or work-product privilege, whereas the client has standing to assert these privileges, Dkt. 29 at 2–3, MDL Plaintiffs seek to intervene to assert both privileges. Fed. R. Civ. P. 24(a)(2) (requiring intervention where existing parties do not "adequately represent the interest").[2]

MDL Plaintiffs' motion is timely. *See* Fed. R. Civ. P. 24(a)(2), (b)(1). In considering the timeliness of intervention, "the Court evaluates three factors: (1) the stage of the proceeding; (2) prejudice to other parties; and (3) the reason for and length of the delay." *Sun Sky Hosp. LLC*, 2018 WL 5425803, at *3. At this juncture, given the JMPL transfer order, it is unclear whether this Court will adjudicate the privilege issue. *See id.* (finding intervention was timely where intervenor "moved to intervene before the Court had resolved the dispute concerning whether the documents . . . are privileged"). Nor would intervention prejudice TCA or 3M. The Court already apprised the parties of the

---

[2] *See also* Dkt. 29 at 4 (3M noting that "none of the law firm clients of TCA have moved to quash the subpoena or intervene in this dispute"); Dkt. 23 at 6 (TCA arguing that "the Court should permit Plaintiffs' counsel to assert [the privilege]"); Dkt. 24 at 2 ("[I]f the Court were to find TCA did not have standing . . . then certainly the attorneys for Plaintiffs in the MDL have that standing."); Dkt. 27 at 3 (3M arguing that "[t]o the extent that Plaintiffs' leadership counsel had any privileged or other protected matter," it could "move[] to intervene" under Rule 24(a)(2)).

standing issue, Dkt. 22, and both parties have expressly contemplated the possibility of MDL Plaintiffs' intervention, *see* Dkt. 23 at 6; Dkt. 27 at 3. Finally, MDL Plaintiffs were not dilatory. Intervention would be timely even if MDL Plaintiffs waited for the Court to resolve TCA's standing to assert either privilege. *See Swoboda v. Manders*, 665 F. App'x 312, 314 (5th Cir. 2016) (finding motion to intervene was timely when filed two months after the court held that existing party lacked privilege in the documents at issue); *In re Grand Jury Proceedings (Freeman)*, 708 F.2d 1571, 1575 (11th Cir. 1983) (holding party should have been permitted to intervene "as soon as the privilege issue is raised").

Where, as here, the basis for intervention is the attorney-client privilege and the work-product doctrine, "the test for intervention of right under Rule 24(a)(2)" is met. *Sun Sky Hospitality LLC*, 2018 WL 5425803, at *2; *see also In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege qualify as sufficient interests to ground intervention as of right."). So too is the standard for permissive intervention under Rule 24(b)(1). *See, e.g.*, *Stoddard v. Donahoe*, 228 P.3d 144, 146 n.5 (Ariz. App. 2010) ("Because Cuccia has an interest in protecting her legal file, her attorney-client privilege . . . and/or her work product, permissive intervention was appropriate."). The Court should thus grant MDL Plaintiffs' motion to intervene pursuant to Rule 24(a)(2) or (b)(1). *See, e.g.*, *United States v. Krane*, 625 F.3d 568, 571 (9th Cir. 2010); *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 828 (9th Cir. 1994); *In re Grand Jury Proceedings Klayman*, 760 F.2d 1490, 1491 (9th Cir. 1985).[3]

---

[3] *See also, e.g.*, *In re Katz*, 623 F.2d 122, 125 (2d Cir. 1980); *Swoboda*, 665 F. App'x at 314–15; *United States v. Hallinan*, 290 F. Supp. 3d 355, 362 (E.D. Pa. 2017); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 174 (S.D.N.Y. 2008); *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20–21 (E.D.N.Y. 1996); *United States v. Mullen & Co.*,

## II. Motion to Transfer Under Rule 45(f)

### A. Legal Standard

Rule 45(f) instructs that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion . . . to the issuing court[.]" Fed. R. Civ. P. 45(f); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 n.3 (9th Cir. 2017). Transfer is proper if *either* "the person subject to the subpoena consents" *or* "the court finds exceptional circumstances." Fed. R. Civ. P. 45(f); *Venus Medical Inc. v. Skin Cancer & Cosmetic Dermatology Ctr., PC*, 2016 WL 159952, at *2 (D. Ariz. Jan. 14, 2016).

### B. Argument

MDL Plaintiffs move to transfer 3M's motion to compel to the MDL court pursuant to Rule 45(f). There is no need to wait for JPML transfer when Rule 45(f) vests this Court with its own power to do so. The inquiry is straightforward: TCA—"the person subject to the subpoena"—consents to transfer. Dkt. 35 at 5; *see, e.g.*, *Youtoo Techs., LLC v. Twitter, Inc.*, 2017 WL 431751, at *2 (N.D. Cal. Feb. 1, 2017); *San Juan Cable LLC v. DISH Network LLC*, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015).

In addition, the mere existence of the MDL is an exceptional circumstance warranting transfer. *See In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017). 3M recognized as much in moving to transfer other subpoena-related actions currently pending in the District of Alaska, the Middle District of Florida, and the Western District of Texas. 3M's position in those cases inescapably supports transfer here:

---

776 F. Supp. 620, 620 (D. Mass. 1991); *In re Grand Jury*, 106 F.R.D. 255, 257 (D.N.H. 1985); *Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689, 691 n.3 (N.D. Ill. 1983).

> [D]istrict courts have repeatedly held that *"the MDL status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in favor of transfer to the Issuing Court under Rule 45(f)."* In re Disposable Contact Lens Antitrust Litig., 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (emphasis added); *see also Mylan, Inc. v. Analysis Grp.*, 2018 WL 1204183, at *1 (D. Mass. April 20, 2018); *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915, at *2 (W.D. Tex. April 27, 2017); *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (D. Md. May 26, 2015)[.]

Ex. 3 (9/4/20 3M Mot. to Transfer in M.D. Fla.) at 4–5; *accord* Ex. 1 (9/9/20 3M Mot. to Transfer in D. Alaska) at 4–5 & n.7; Ex. 2 (9/9/20 3M Mot. to Transfer in W.D. Tex.) at 4–5.

Exceptional circumstances also exist given the "risk of inconsistent rulings that could disrupt the management of the underlying litigation." *OrthoAccel Techs. Inc. v. Propel Orthodontics LLC*, 2016 WL 6093367, at *1 (D. Ariz. Oct. 19, 2016). The MDL court has already entered a pretrial order addressing the attorney-client and work-product privileges, MDL Dkt. 442; adjudicated related motions, *e.g.*, MDL Dkt. 1172; and is now resolving such motions in bellwether cases, *e.g.*, *Hacker v. 3M Co.*, 7:20-cv-00131, Dkt. 18 (N.D. Fla. Aug. 25, 2020). 3M has also moved to compel documents from third parties like TCA, *e.g.*, MDL Dkt. 1178, and will likely continue to do so throughout the MDL. These "subpoenas are indissolubly intertwined with the underlying case[.]" *OrthoAccel*, 2016 WL 6093367, at *2; *see also In re Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378, 1378 (JPML 2010) (transferring motion because "this litigation would be best served by allowing the transferee [court] to determine the scope of discovery in the MDL"). In other words, as 3M recently made clear when moving to transfer other subpoena actions:

> Piecemeal resolution of the [subpoena-related motions] would also undermine the statutory role of the MDL court and threaten the integrity of the bellwether process. The purpose of forming an MDL is to allow a single judge to conduct "consolidated pretrial proceedings" for a group of cases involving common questions of fact. 28 U.S.C. § 1407(a). Scattering these important discovery disputes across the country would directly [work] against that purpose, sacrificing the efficiency of consolidated MDL proceedings for no gain.

Ex. 3 (9/4/20 3M Mot. to Transfer in M.D. Fla.) at 4.

In short, 3M's motion to compel "could not be a better candidate for transfer under Rule 45(f)[,]" *id.* at 7, because transfer would allow the court that is intimately familiar with the "relevance of the documents at issue to the complex claims being litigated" to rule on the motion, rather than requiring this Court to get "knee-deep in the nuances of the underlying litigation," *In re Disposable Contact Lens*, 306 F. Supp. 3d at 381–82.

### III. Motion to Transfer Under Section 1407

#### A. Legal Standard

28 U.S.C. § 1407(b) expressly contemplates "coordinated or consolidated pretrial proceedings" in the MDL court. *See, e.g.*, *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003) (referring motion to MDL court pursuant to section 1407(b)); *see also* Wright & Miller, *Federal Practice & Procedure* § 2463.1 n.6 (3d ed.) (stating the MDL court "has authority to decide motions to compel . . . directed to nonparties in any district").

#### B. Argument

Section 1407(b) permits transfer when it "will best serve the interests of justice, judicial efficiency, and consistency underlying the MDL rules." *In re Welding Rod Prods. Liab. Litig.*, 406 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005). For the same reasons

that Rule 45(f) transfer promotes judicial economy and avoids piecemeal rulings, this matter should be transferred pursuant to section 1407(b). *See id.*; 28 U.S.C. § 1407(a) (authorizing consolidation to "promote the just and efficient conduct of such actions").

## IV. Motion to Stay

### A. Legal Standard

This Court has the inherent authority to stay the matters on its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). In addition to considering "the threat of prejudice to the parties and whether a stay would cause an undue delay[,]" *Barker v. Prospect Mortg., LLC*, 2013 WL 5462256, at *1 (D. Ariz. Oct. 2, 2013), the Court may weigh factors such as the "convenience" of a stay and "the efficient use of judicial resources," *Melendres v. Maricopa Cnty.*, 2009 WL 2515618, at *1 (D. Ariz. Aug. 13, 2009) (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995)).

### B. Argument

If the Court does not transfer this action to the MDL court pursuant to Rule 45(f) or section 1407(b), MDL Plaintiffs move to stay these proceedings pending the JPML's transfer decision. A short stay while the JPML adjudicates 3M's motion to vacate the CTO would not prejudice 3M or TCA. *See, e.g., Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421, 425–26 (D.N.J. 2003) ("The stay is not for an indeterminate period of time, and Hertz can secure effective relief after the MDL Panel decides the consolidation motion."). JPML briefing will conclude by the end of next month, and the JPML will likely decide whether to transfer shortly thereafter. *Id.* ("Barring unusual circumstances, the MDL Panel will decide the motion in a relatively short period of time.").

Staying this action would also avoid needless expenditure of resources. *See* Fed. R. Civ. P. 1. According to 3M, a "brief" stay promotes judicial economy because "[t]here is no need for this court to duplicate the analysis that [another] court must eventually make[.]" Ex. 5 (4/10/20 3M Mot. to Stay in W.D. Mo.) at 8, 10; *Manual for Complex Litigation* (Fourth) § 22.35 (2004) ("A stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely[.]").

District courts routinely stay cases while awaiting JPML transfer decisions. *See, e.g.*, *Johnson v. Sanofi, S.A.*, 2017 WL 1326311, at *2 (E.D. Cal. Apr. 11, 2017); *Good v. Prudential Ins. Co. of Am.*, 5 F.Supp.2d. 804, 809 (N.D. Cal. 1998); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). Indeed, in similar discovery actions, 3M argued for a stay for this very reason, emphasizing that "*no court* has denied a stay of proceedings pending transfer of a removed case to the Combat Arms MDL." Ex. 5 (4/10/20 3M Mot. to Stay in W.D. Mo.) at 1–2. This Court should follow suit and stay this miscellaneous discovery action pending the JPML's decision. *Id.* (collecting cases).[4]

**CONCLUSION**

For all these reasons, MDL Plaintiffs request that the Court grant their motion to intervene and transfer this matter or alternatively issue a stay pending JPML transfer.

DATED this 17th day of September 2020

By: /s/ Karen Beyea-Schroeder

---

[4] If the Court denies MDL Plaintiffs' motions to transfer or stay, Plaintiffs seek leave to brief the attorney-client and work-product privileges before the new hearing date.

Karen Beyea-Schroeder
(State Bar No. 021675)
Burnett Law Firm
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
Telephone: (832) 413-4410
Email: karen.schroeder@rburnettlaw.com

Bryan F. Aylstock
(*Pro Hac Vice Application Forthcoming*)
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Email: baylstock@awkolaw.com

Michael A. Sacchet
(*Pro Hac Vice Application Forthcoming*)
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Telephone: (612) 361-8220
Email: mas@ciresiconlin.com

*Attorneys for MDL Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2020, I electronically transmitted the foregoing document to the Clerk of the U.S. District Court using the CM/ECF system for filing and service to all parties/counsel registered to receive copies in this case.

/s/ Karen Beyea-Schroeder